UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| Plaintiff, | * | |
| -vs- | * | Docket No. CR–00132-001 |
| WILLIAM LESLIE WINGO, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## SENTENCING MEMORANDUM AND OBJECTIONS TO PRESENTENCE

COMES NOW, William Leslie Wingo, pursuant to 18 U.S.C. §§ 3553, 3661, and Rule 32(i) of the Federal Rules of Criminal Procedure, and presents the following relevant information for this Court to consider in determining a reasonable sentence to impose. The overriding principle and basic mandate of Section 3553(a) requires district courts to impose a sentence "sufficient, but not greater than necessary," to comply with the four purposes of sentencing set forth in Section 3553(a)(2)–retribution, deterrence, incapacitation, and rehabilitation. In determining a sentence that complies with that mandate, Rule 32(i) requires that the Defendant be sentenced on the basis of accurate information and that erroneous information in the Defendant's PSI is corrected before imposition of punishment.

**I**    **Introduction**

As an initial matter, the Defendant has pleaded guilty and acknowledges his guilt in the instant offense.  He accepts responsibility for his conduct, understanding that the offense requires the appropriate attention of this Court.  The Defendant stands before this Court in more trouble than he has ever imagined possible.  He has embarrassed himself and humiliated his family through his illegal conduct.  The instant offense has been a "wake up call" and the Defendant has already experienced substantial rehabilitation.  He is nearly 36 years old facing the possibility of up to 40 years imprisonment and is dedicated to never again make the mistakes in judgment that lead to his involvement in the instant offense.

The Defendant is remorseful and contrite.  He has attempted to repay society already by waiving many substantive rights, admitting his conduct, and pleading guilty. These actions have assisted the government and the judiciary through facilitating the administration of justice. The Defendant wishes to further repay society through serving this Court's sentence and through achieving total rehabilitation so that he never again becomes involved in illegal conduct in the future.  He recognizes that his addiction and abuse of controlled substances has significantly led to his involvement in the instant offense and understands that if he is to achieve rehabilitation, he must address his addictions while he is incarcerated.

2

II.    **The Defendant Requests that this Court Recommend that He Participate in the Bureau of Prisons Drug Treatment Program.**

The Defendant respectfully requests that this Court, as a part of the sentence imposed upon him, authorize the Defendant to participate in the Bureau of Prisons' Drug Rehabilitation Program pursuant to the Bureau of Prisons' Program Statement 5330.10.

On May 25, 1995, the Federal Bureau of Prisons promulgated Bureau of Prisons' Program Statement 5330.10, which established the Federal Bureau of Prisons Drug Treatment Program. The residential drug treatment program is a nine-month intensive rehabilitation program for inmates with substance abuse problems. The Program provides for up to one year reduction in the sentence - at the Bureau of Prisons' discretion - for inmates who successfully complete the program.

In the case of the Defendant, his Pre-Sentence Investigation Report establishes that he has a long and serious history of substance abuse. The Defendant began drinking and smoking marijuana when he was 13 years old and was using LSD while in high school. His abuse of drugs progressed to using cocaine and "crack" cocaine and culminated with his abuse of methamphetamine beginning in 2004.

3

The Defendant recognizes that his continued abuse and ultimate addiction to illegal substances has been the single most significant factor contributing to his problems with the law in the past and to the Defendant's involvement in the instant offense. With such a severe addiction, the Defendant found himself associating with individuals who were involved in supplying, purchasing, and using methamphetamine. The Defendant's decisions to become involved with these individuals, and to purchase and sell methamphetamine were clouded by his abuse and addictions to illegal substances. Looking back on his conduct, he now understands that he must address and correct his drug abuse in order to separate himself completely from the those individuals and ensure that he never again becomes involved in illegal conduct.

The Defendant would respectfully submit that he qualifies for participation in the program and requests that the Court recommend his participation in the Bureau's Treatment Program.

**III    The Defendant Is Entitled to a Three Level Reduction for His Timely and Complete Acceptance of Responsibility, Under U.S.S.G. § 3E1.1**

The Defendant respectfully requests that this Honorable Court reduce his base offense level according to § 3E1.1 of the United States Sentencing Guidelines. The Defendant has pleaded guilty and provided the authorities with all the information he knows concerning the offense. Additionally, the Defendant is

sincerely remorseful and contrite and that he has truly accepted responsibility for his actions. Thus, although he tested positive for methamphetamine while on bond, he has satisfied the requirements under § 3E1.1, in order for the adjustment to apply.

Under the United States Sentencing Guidelines, a criminal defendant may have his base offense level reduced by up to 3 levels for his acceptance of responsibility. U.S.S.G., § 3E1.1 (2005). Revised Application Note 1 to § 3E1.1 states, in part, that "truthfully admitting the conduct comprising the offense of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable under §1B1.3" will allow a defendant to receive a two-level adjustment under §3E1.1. Note 1(a). A defendant must also show remorse for his or her actions. "Section 3E1.1 is intended to reward those defendants who affirmatively acknowledge their crimes and express genuine remorse for the harm caused by their actions." United States v. Carroll, 6 F.3d 735, 740 (11th Cir. 1993); United States v. Scroggins, 880 F.2d 1204, 1215 (11th Cir.1989), cert. denied, 494 U.S. 1083, 110 S. Ct. 1816, 108 L. Ed. 2d 946 (1990).

"In deciding whether a defendant is entitled to a reduction for acceptance of responsibility, a district court must necessarily weigh a multitude of factors, both

objective and subjective, and make subjective determinations when called to do so." United States v. Harris, 882 F.2d 902, 906 (4th Cir. 1989). Section 3E1.1 provides a non-exhaustive list of factors which the court should consider when granting this reduction including truthfully admitting the conduct comprising the offense. U.S.S.G., §3E1.1, Commentary Note 1(a)-(h) (2004). A guilty plea is strong evidence of contrition. United States v. Harris, 882 F.2d 902, 905 (4th Cir. 1989). A district court is required to look at the timeliness of acceptance as a factor in making a determination as to the defendant's sincerity. United States v. Jones, 31 F.3d 1304, 1315 (4th Cir. 1994). Further, a defendant need only admit his conduct which forms the offense of conviction for the reduction to be allowed. U.S.S.G. § 3E1.1, commentary 1(a).

A defendant may even be eligible for a § 3E1.1 reduction even in situations where the defendant engages in conduct that seemingly fails to conform with acceptance of responsibility. Although pleading guilty is indicative of acceptance of responsibility, the Commentary clearly states that in certain instances, a defendant who even proceeds to trial may be eligible for the reduction. U.S.S.G., § 3E1.1, Commentary Note 2 (2004). See, United States v. Gonzalez 70 F.3d 1236,1239 (11th C. 1995). The Guidelines clearly allow a criminal defendant to receive the acceptance of responsibility reduction while still protecting his

6

constitutional rights.

Even, the fact that a defendant receives an obstruction of justice enhancement does not necessarily preclude him/her from receiving an acceptance of responsibility reduction. Application Note 4 to § 3E1.1 was amended to state that "conduct resulting in an enhancement under § 3C1.1 (Willfully Obstructing or Impeding Proceedings) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct. There may, however, be extraordinary cases in which adjustments under both §§ 3C1.1 and 3E1.1 may apply." U.S.S.G. § 3E1.1. Application Note 4 (2004) The comment does not define the term "extraordinary." United States v. Marin, 916 F.2d 1536, 1538-39 (11th Cir. 1991)

In Marin, the court of appeals remanded the case back to sentencing for the district court to determine whether the defendant accepted responsibility despite the fact he qualified for an obstruction of justice enhancement. Id. at 1539. United States v Hicks, 948 F.2d 877, 885 (4th Cir. 1991)(affirming an acceptance of responsibility reduction even though the defendant received a § 3C1.1 enhancement for his attempt to dispose of evidence).

In United States v Kendrick, 22 F.3d 1066 (11th Cir. 1994), this Circuit remanded a defendant's case for resentencing because the district court had refused to grant a § 3E1.1 adjustment on the basis that the defendant tested positive for

7

drugs. The Court held, "[c]ontrary to the government's assertions, Appellant's positive test for drug use does not mandate the denial of an acceptance of responsibility reduction. The decision to deny a reduction for acceptance of responsibility is discretionary; a positive drug test is but one of several factors that the court may consider in utilizing its discretion." Id. at 1069; citing United States v. Thompson, 976 F.2d 666, 673 (11th Cir.1992); United States v. Scroggins, 880 F.2d 1204, 1216 (11th Cir.1989).

In the present case, the Defendant pleaded guilty and clearly accepted responsibility for his conduct. He pleaded guilty early on, saving the government the effort of preparing for trial. Additionally, the Defendant has gone even further and provided the authorities with valuable information and assistance. The Defendant's sincere remorse, contrition, and personal acceptance of responsibility are evident from the Defendant's actions since being charged in the instant offense. Further, the government has promised in the plea agreement that it would recommend a three level § 3E1.1 adjustment due to the Defendant's timely recognition and affirmative acceptance of responsibility.

In the face of these evident and overwhelming reasons to apply the § 3E1.1 adjustment, the probation office has refused to apply the adjustment due to the Defendant's struggle with methamphetamine addiction. The Defendant has not

falsely denied or frivolously contested his involvement in the offense. Rather, he has clearly shown an affirmative recognition of acceptance of responsibility. The Defendant has openly admitted his involvement in the offense, and is sincerely remorseful for his crime. As a result of the Defendant's early decision to plead guilty, the government has been spared the time and expense of preparing for trial. Further, he has satisfied each of the factors listed in § 3E1.1 in order for a defendant to receive credit for acceptance of responsibility.

Similar to the situation in Kendrick, the probation officer has ignored the factors supporting a § 3E1.1 adjustment because the Defendant tested positive for methamphetamine prior to entering his guilty plea. However, testing positive for illegal substances does not disqualify an individual for an acceptance of responsibility adjustment. Kendrick, 22 F.3d at 1069. The Defendant cannot deny that he has abused methamphetamine and he is deeply embarrassed and ashamed of his conduct. His addiction to methamphetamine does not excuse his conduct while on bond. However, it does help explain how he came to violate bond. His abuse of methamphetamine in the face of a strong addiction to that drug can be reconciled with an acceptance of responsibility adjustment.

Accordingly, the Defendant requests that this Honorable Court apply a § 3E1.1 adjustment at sentencing and reduce his offense level by three levels.

**IV.    The Court Should Require the Government to Prove the Type of Methamphetamine Involved in the Offense by Proof Beyond a Reasonable Doubt.**

The Defendant has pleaded guilty and admitted to an offense involving more than 50 grams of methamphetamine, in violation of 21 U.S.C. § 841(b)(1)(B). Further, the Defendant admits to selling methamphetamine in order to support his drug habit. Because only a small amount of drugs were seized and because there are no records of drug sales, the total amount of methamphetamine attributable to the Defendant is difficult to estimate. The probation officer has been forced to use rough estimates of convicted drug addicts, who are relying on their drug affected memories in order to guestimate the amount, and more importantly, the type of methamphetamine attributable to the Defendant for sentencing.

While fully admitting his criminal conduct, the Defendant takes exception to the fact the probation officer has attributed 60.57 grams of "Ice", in addition to 209.75 grams of methamphetamine for purposes of calculating his base offense level. The determination that over 60 grams of the substance was "Ice" is based the recollection of Courtney Davidson, a convicted drug addict that used methamphetamine with the Defendant. The Defendant concedes that it is possible that his conduct involved approximately 270 grams of methamphetamine. However, he does not believe that 60.57 grams of that total was the "Ice" form of

methamphetamine.

Attributing the "Ice" form of methamphetamine to the Defendant results in a significant increase in the offense level.[1]  Accordingly, the Defendant submits that if he is to be attributed over 60 grams of "Ice", the government should be required to proved beyond a reasonable doubt that the type of methamphetamine was "Ice".  The government cannot satisfy this standard.  Therefore, the Defendant should be punished based on the offense level corresponding to 270 grams of methamphetamine.

Whatever the constitutional limitations on the advisory sentencing scheme, it can never be "reasonable" to base any significant increase in a defendant's sentence on facts that have not been proved beyond a reasonable doubt. See Ring v. Arizona, 536 U.S. 584, 592-93, and n.1 (2002)(holding that any fact essential to imposition of the death penalty must be submitted to a jury and found beyond a reasonable doubt); Apprendi v. New Jersey, 530 U.S. 466, 477 (2000) (finding a sentence violates the right to "a jury determination that [the defendant] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt");

---

[1] 209.75 grams of methamphetamine, plus 60.57 grams of "Ice" results in a base offense level 32 under § 2D1.1(c)(4). Whereas, 270.22 grams of methamphetamine results in an offense level 28 under § 2D1.1(c)(6).

Jones v. United States, 526 U.S. at 243 n.6 (1999)(holding that the carjacking statute, if construed as defining a single crime with three maximum penalties instead of three distinct offenses would violate the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment).

Virtually all contested specific offense characteristics and upward adjustments under the Guidelines involve separate criminal conduct. That is true in the instant case. For example, the additional drug quantities attributed to the Defendant is a separate crime from the crime to which the Defendant has admitted. United States v. Toliver, 351 F.3d 423, 430 (9th Cir. 2005). For these facts, the defendant, is both presumptively innocent and has a right against self-incrimination. Mitchell v. United States, 526 U.S. 314 (1999)(noting that the Fifth Amendment covers any proceeding that could lead to "longer incarceration") (citing McKune v. Lile, 536 U.S. 24, 52 (2002) (O'Connor, J., concurring)). The reasonable doubt standard is a necessary safeguard to assure that "longer incarceration" does not result from a prisoner's exercise of self-incrimination rights at sentencing, leading to an unreliable result on a controverted issue by use of a preponderance standard.

It is a cardinal principle of statutory interpretation that, if there is a "serious doubt" as to a statute's constitutionality, the court must "first ascertain whether a

construction of the statute is fairly possible by which the question may be avoided." <u>Zadvydas v. Davis</u>, 533 U.S. 678, 689 (2001) (quoting <u>Crowell v. Benson</u>, 285 U.S. 22, 62 (1932)). "[E]very reasonable construction must be resorted to, in order to save a statute from unconstitutionality." <u>Hooper v. California</u>, 155 U.S. 648, 657 (1895)). "[I]f an otherwise acceptable construction of a statute would raise serious constitutional problems, and where an alternative interpretation of the statute is 'fairly possible,' we are obligated to construe the statute to avoid such problems" <u>INS v. St. Cyr</u>, 533 U.S. 289, 299-300 (2001).

After <u>United States v. Booker</u>, 125 S. Ct. 738 (2005), the survival of the reasonable doubt standard separate from the Sixth Amendment right to a jury trial in applying sentencing enhancements raises just such a doubt. The concern is especially high because of the extreme personal interest in liberty, the danger of erroneous punishment under a lesser standard, and the constellation of constitutional rights at issue where unadjudicated criminal conduct results in a higher sentence. The reasonable doubt standard is included among the interests "of transcending value" that cannot be compromised. See <u>Perry v. Cindermann</u>, 408 U.S. 593, 597 (1972); <u>Speiser v. Randall</u>, 357 U.S. 513, 525-26 (1958).

In the instant case, the Court should avoid the difficult question of whether the Constitution requires the reasonable doubt standard in applying sentencing

enhancements and should utilize proof beyond a reasonable doubt as a matter of statutory construction or judicial discretion.  This result is not only compelled by law, but is good sentencing policy. The greater certainty of the reasonable doubt standard encourages confidence in the judicial system that only punishes based on facts proven to a high standard. The evil of the pre-<u>Booker</u> guidelines of the "tail wagging the dog" – a conviction for a relatively minor amount of drugs resulting in a huge sentence based on transactions only provable by a preponderance– will be a thing of the past. The reasonable doubt standard is essential to fair and accurate sentencing.

Although this is a matter of first impression in the Second Circuit, several district courts have agreed that "beyond a reasonable doubt" is the proper standard to use in order to apply contested sentencing enhancements.  In <u>United States v. Huerta-Rodriguez</u>, 355 F. Supp. 2d 1019, 1026 (D. Neb. 2005) (Bataillon,J.), the court found that "[i]n order to comply with due process in determining a reasonable sentence, this court will require that a defendant is afforded procedural protections under the Fifth and Sixth Amendments in connection with any facts on which the government seeks to rely to increase a defendant's sentence." The court noted that "when a defendant pleads guilty, he or she, of course, forgoes not only a fair trial, but also other accompanying constitutional guarantees. *** A waiver of

14

the right to a trial by a jury, however, does not equate to a waiver of the right to have the government prove its case beyond a reasonable doubt." Id. at 1027; see also United States v. Kelley, 355 F. Supp. 2d 1031 (D. Neb. 2005) (Bataillon, J.)

In United States v. Harper, 360 F. Supp. 2d 833, 836 (E.D. Tex. 2005) (Clark, J.), the court concluded that sentencing enhancements "require more than inferences drawn from a preponderance of evidence." See also, United States v. Ochoa-Suarez, 2005 U.S. Dist. LEXIS 1667 (S.D.N.Y. Feb. 7, 2005) (Keenan, J.)(finding that while before Booker the court would have applied U.S.S.G. § 3B1.1, after Booker it would not because there has been no finding by a jury beyond a reasonable doubt); United States v. Gray, 362 F. Supp. 2d 714 (S.D. W. Va. 2005) (Goodwin, J.)(both preponderance and reasonable doubt standards may apply, post-Booker, to fact-finding in cases to aid in determining how much weight to give advisory guideline range.)

In United States v. Pimental, 367 F. Supp. 2d 143, 153 (D. Mass., 2005), the court noted that "[t]he fair preponderance standard made sense in the context of fully indeterminate sentencing. It does not make sense in this hybrid regime where rules still matter, and certain facts have important, if not dispositive, consequences." These facts "should be tested by our highest standard of proof." Id at 153. "We cannot have it both ways: We cannot say that facts found by the judge

15

are only advisory, that as a result, few procedural protections are necessary and also say that the Guidelines are critically important. If the Guidelines continue to be important, if facts the Guidelines make significant continue to be extremely relevant, then Due Process requires procedural safeguards and a heightened standard of proof, namely proof beyond a reasonable doubt" Id. at 154.

Accordingly, the Defendant submits that this Court should require the government to prove that the offense involved the "Ice" form of methamphetamine by proof beyond a reasonable doubt.  This lone contested enhancement has increased the Defendant's potential sentence by at least five  years.  The PSI recommends a range of 168 to 210 months imprisonment based on an offense level 34 and a category II.  However, this range is based partially on the finding that 60.57 grams of "Ice" was involved. Also, that range fails to account for a 3 level adjustment under § 3E1.1 for acceptance of responsibility.

If the methamphetamine involved was not "Ice", the offense level is reduced to 28 and the guideline range would be 108 to 135 months imprisonment. Additionally, if the Defendant receives a 3-level adjustment under § 3E1.1, the offense level is reduced to 25 and the guideline range is 63 to 78 months imprisonment.  Certainly an increase of this significance should require proof amounting to more than a mere preponderance of the evidence.  In order to satisfy

due process, such an enhancement needs to be proved beyond a reasonable doubt. If the type of methamphetamine cannot be proved, then the court should rely only upon the form of methamphetamine carrying the lower penalty.

**V.     This Court Should Consider the Advisory Guidelines along with All Relevant Factors under 18 U.S.C. §§ 3553(a) and 3661 In Determining a Sentence That Is No Greater than Necessary to Achieve the Purposes of Sentencing**

As this Court is aware, in United States v. Booker, 125 S. Ct. 738 (2005), the Supreme Court held that the mandatory guideline system created by the Sentencing Reform Act of 1984 (SRA) was unconstitutional. Therefore, the appropriate remedial measure required the severance and excision of two provisions of the federal sentencing statute, including 18 U.S.C. § 3553(b)(1), the provision that made the Guidelines mandatory. See Booker, 125 S. Ct. at 757 (2005) (Breyer, J.). "So modified, the Federal Sentencing Act, see Sentencing Reform Act of 1984, as amended, 18 U.S.C. § 3551 et seq., 28 U.S.C. § 991 et seq., makes the Guidelines effectively advisory." 125 S. Ct. 738, 757. As a consequence, the federal sentencing statute still "requires a sentencing court to consider Guidelines ranges, . . . , but it permits the court to tailor the sentence in light of other statutory concerns

as well." <u>Id</u>.

>After <u>Booker</u>, federal sentencing is vastly different. Treating the Guidelines as advisory requires that the Court consider the guideline range calculation as merely one of many factors in determining a sentence *no greater than necessary to achieve the goals of sentencing* set forth in Section 3553(a)(2).  In the instant case, the calculations in the PSI result in an advisory guideline range of 168 to 210 months imprisonment.  The Defendant submits that a sentence within that range is greater than necessary to achieve the goals of sentencing, in violation of § 3553(a).    **(A)    The § 3553(a) Sentencing Mandate**

Section 3553(a) is comprised of two distinct parts: the so-called "sentencing mandate" contained in the prefatory clause of Section 3553(a) and the "factors" to be considered in fulfilling that mandate.  The overriding principle and basic mandate of § 3553(a) requires district courts to impose a sentence "sufficient, but not greater than necessary," to comply with the four purposes of sentencing set forth in Section 3553(a)(2): (a) retribution (to reflect seriousness of the offense, to promote respect for the law, and to provide just punishment); (b) deterrence; (c) incapacitation (to protect the public from further crimes); and (d) rehabilitation (to provide the defendant with needed educational or vocational training, medical care,

or other correctional treatment in the most effective manner).  <u>United States v.</u>

<u>Phelps</u>, 366 F.Supp.2d 580, 587 (E.D. Tenn. 2005)

The sufficient-but-not-greater-than-necessary requirement is often referred

to as the "parsimony provision." The parsimony provision is not just another

"factor" to be considered along with the others set forth in Section 3553(a).

Instead, it sets an independent limit on the sentence a court may impose. See

<u>United States v. Denardi</u>, 892 F.2d 269, 276-77 (3rd Cir. 1989)  Since § 3553(a)

requires sentence to be no greater than necessary to meet four purposes of

sentencing, imposition of sentence greater than necessary to meet those purposes is

reversible, even if within guideline range.  <u>Id</u>.

In determining the sentence minimally sufficient to comply with the Section

3553(a)(2) purposes of sentencing, the court must consider several factors listed in

Section 3553(a). These factors include:  (1) "the nature and circumstances of the

offense and the history and characteristics of the defendant;" (2) "the kinds of

sentence available;"  (3) the guidelines and policy statements issued by the

Sentencing Commission, including the (now non-mandatory) guideline range; (4)

the need to avoid unwarranted sentencing disparity; and (5) the need to provide

restitution where applicable. 18 U.S.C. § 3553(a)(1), (a)(3), (a)(5)-(7).  Neither the

statute itself nor <u>Booker</u> suggests that any one of these factors is to be given greater

19

weight than any other factor. However, it is important to remember that all factors are subservient to Section 3553(a)'s mandate to impose a sentence not greater than necessary to comply with the four purposes of sentencing.

In addition to considering factors under § 3553(a), sentencing courts have a duty to consider many factors that the Guidelines specifically exclude from consideration. As noted by the Second Circuit, "[p]rior to Booker/Fanfan, the section 3553(a) requirement that the sentencing judge "consider" all of the factors enumerated in that section had uncertain import because subsection 3553(b)(1) required judges to select a sentence within the applicable Guidelines range unless the statutory standard for a departure was met. Now, with the mandatory duty to apply the Guidelines excised, the duty imposed by section 3553(a) to 'consider' numerous factors acquires renewed significance." United States v. Crosby, 397 F.3d at 111 (2nd Cir. 2005)

For example, under 18 U.S.C. § 3661 "no limitation shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence". United States v. Phelps, 366 F.Supp.2d 580, 592-93 (E.D. Tenn. 2005). This statutory language overrides the now-advisory policy statements in Part H of the sentencing guidelines, which list as "not

ordinarily relevant" to sentencing a variety of factors such as the defendant's age, educational and vocational skills, mental and emotional conditions, drug or alcohol dependence, and lack of guidance as a youth. Id.

Accordingly, this Court must consider all factors – even factors prohibited by the formerly mandatory Guidelines in determining the type of sentence that satisfies the sentencing mandate of § 3553(a). See, United States v. Winingear, 422 F.3d 1211, 1246 (11th Cir. 2005)(declining to address whether sentences within the Guidelines range were per se reasonable, holding that as long as the sentence complied with 18 U.S.C. § 3553(a), the sentence was reasonable.)   The sentencing judge, after considering §§ 3553(a) and 3661 factors (including the Guidelines), has full discretion to sentence anywhere within the statutory range.  If the Booker Court thought otherwise – if it thought the Guidelines not only had to be 'considered' (as the amputated statute requires) but had generally to be followed–its opinion would surely say so. Booker, 125 S. Ct. at 791 (Scalia, J., dissenting). Likewise, if the remedial majority thought the guidelines had to be given "heavy weight," its opinion would have said so. The remedial majority clearly understood that giving any special weight to the guideline range relative to the other factors would violate the Sixth Amendment.

This Circuit has confirmed that after the district court has accurately

calculated the Guideline range, it may impose a more severe or more lenient sentence as long as the final sentence is reasonable.  United States v. Crawford, 407 F.3d 1174, 1179 (11th Cir. 2005)  In United States v. Winingear, 422 F.3d 1211, 1240 (11th Cir. 2005), the Eleventh Circuit noted that § 3553(a) instructs district courts imposing a sentence to consider "the available sentences, the applicable Guideline range, the nature and circumstances of the offense, and the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, and provide the defendant with needed medical care."  Id. at 1246.  The Court held that an appellant's sentence is to be reviewed for reasonableness and explained that "the sentence must be reasonable in the context of the factors listed in 18 U.S.C. § 3553(a)."  Id.

In the instant case, several factors exist, independent of the guideline range calculations, that warrant a sentence below what is contemplated in the PSI in the instant case.  Moreover, given the Defendant's acceptance of responsibility, remorse, post-conviction rehabilitation, and his personal history, the sentence recommended in the PSI is far greater than necessary to achieve the goals of sentencing.

**B.**    **Mitigating Factors to Be Considered in Determining a Reasonable Sentence Under 18 U.S.C. § 3553(a)(2)**

As set forth above, after <u>Booker</u>, this Court is statutorily required to impose a sentence that is minimally sufficient to accomplish the purposes of sentencing, and the guidelines are only one of five equally important factors to be considered in determining the minimally sufficient sentence. In the instant case, a minimal sentence of incarceration is sufficient to satisfy the goals of (1) retribution, (2) deterrence, (3) incapacitation, and (4) rehabilitation. Imposition of sentence greater than necessary to meet those purposes is reversible, even if such a sentence falls within the Guideline range.

**(1)    The Defendant's Post-Offense Rehabilitation and Age Make it unlikely that the Defendant will be a Recidivist**

In the instant case, the Defendant has already been substantially rehabilitated. Therefore, at least one of the purposes of sentencing under § 3553(a)(2) has been achieved. The Defendant had already demonstrated substantial gains toward rehabilitation.

The Defendant completely accepted responsibility for his conduct early on in this case, well before sentencing. Today the Defendant stands before this Court humbled, remorseful, and contrite. He recognizes that he made the worst mistake in his life by abusing and selling drugs. His life has been changed forever as a result of his choices and the repercussions of those choices. He realizes that

although his crimes are non-violent, his involvement in the instant offense has contributed to the scourge on society caused by substance abuse. After being locked up for several months awaiting sentencing, the Defendant has been able to remain free of methamphetamine and he finds himself at the absolute bottom, dedicated to never again making the mistakes in judgment that lead to his involvement in the instant offense.

Even when the Guidelines were mandatory, post-offense rehabilitation and the facilitation of the administration of justice were permissible grounds for a downward departure. United States v Rudolph, 190 F.3d 720, 722-23 (6th Cir 1999); United States v Fagan, 162 F.3d 1280, 1284-85 (10th Cir. 1998); United States v Garcia, 926 F.2d 125 (2nd Cir. 1991) United States v Volpe, 224 F.3d 72 (2nd Cir. 2000) (noting that activities facilitating the proper administration of justice may form the basis for a downward departure). After the Guidelines were made advisory, this conduct becomes even more relevant at sentencing.

Additionally, the Defendant's remorse and rehabilitation become even more relevant when coupled with the Defendant's age, making it extremely unlikely that the Defendant will commit other crimes in the future. According to the Sentencing Commission, for defendants over forty, the risk of recidivism drops dramatically,

lessening the need to protect the public from further crimes of the defendant under 3553(a)(2)(C).  See, United States Sentencing Commission, Measuring Recidivism:  The Criminal History Computation of the Federal Sentencing Guidelines at 12, available at www.ussc.gov/publicat/Recidivism_General.pdf  The Commission noted that "[r]ecidivism rates decline relatively consistently as age increases," from 35.5% under age 21, to 9.5% over age 50. After Booker, many courts have considered a defendant's age as a factor for sentencing below the guidelines. See; United States v. Thomas, No. 03-CR-30033-MAP, slip op. at *11 (D. Mass. Mar. 14, 2005); Simon v. United States, No. CR-90-216, slip op. at *28 (E.D.N.Y. Mar. 17, 2005); United States v. Nellum, 2005 U.S. Dist. LEXIS 1568 (N.D. Ind. Feb. 3, 2005)          Remorse is also a factor the Court must consider. see, United States v Fagan, 162 F.3d 1280, 1284-85 (10th Cir. 1998) Under the old departure analysis, "[b]ecause remorse is not a prohibited factor, but a factor already considered in the Sentencing Guidelines, a sentencing court may depart downward if it finds that remorse is present to an exceptional degree."  Now that the Guidelines are merely advisory, the fact of a defendant's remorse is certainly relevant under § 3553(a).   Further, a defendant's desire for drug rehabilitation has also been considered as a permissible factor warranting a downward departure by the sentencing court. United States v Whitaker, 152 F.3d 1238, 1240-41 (10th Cir.

1998).  These factors are even more relevant after <u>Booker</u>.

In the instant case, the Defendant is 35 years old facing at minimum 5 years imprisonment and the possibility of up to 40 years imprisonment.  He is a non-violent drug offender, addicted to methamphetamine, but seeking treatment for that addiction while he is incarcerated.  He has learned his lesson and wants nothing more than to be able to return to his family.  The Defendant has engaged in substantial self-reflection and  recognizes that his decision to become involved in the instant offense was the worst decision he has ever made in his life and he is dedicated to never again becoming involved in illegal conduct.  When released from prison, the Defendant will be much older and will have undergone significant substance abuse treatment.  Accordingly, both rehabilitation and punishment can be achieved through a sentence at the statutory minimum.

### (2)    Assistance Offered and Rendered to the Authorities

The Defendant has offered and provided the authorities with vital information and assistance and has cooperated to end the offense.  He has provided all the information he knows regarding the offense.  Although the government has agreed to file a § 5K1.1 motion for a downward departure upon receiving substantial assistance, after <u>Booker</u>, this Court has the authority to consider the assistance offered and rendered by the Defendant in determining a reasonable

sentence under § 3553(a), independent of a government filed motion under the Guidelines.

Even before the Guidelines were made merely advisory, authority existed for sentencing courts to consider a defendant's cooperation in the absence of a government filed § 5K1.1 motion.  In United States v. Truman, 304 F.3d 586 (6th Cir. 2002), the court held that the sentencing judge had discretion to depart from a prescribed Sentencing Guideline Range due to *assistance offered by a defendant which did not result in the investigation or prosecution of another individual* Id. at 589-91.  The Sixth Circuit reasoned that assistance offered to the government by a defendant can fall under § 5K2.0, permitting the sentencing court to exercise its discretion to depart *without a motion from the government*. Id.  This is because when a defendant moves for a downward departure based on cooperation not rising to the level of substantial assistance; or not involving the investigation or prosecution of another person; or assistance rendered to state or local authorities, § 5K1.1 does not apply and the sentencing court may consider the defendant's request regardless of whether the government has made a motion to depart. Truman, 304 F.3d at 591.

Other circuits made similar holdings.  The Second Circuit has stated that § 5K1.1 is not the exclusive provision for dealing with all cooperation, but rather the

27

court may consider a defendant's cooperation not contemplated by § 5K1.1 under the grant of discretion to sentencing judges embodied in § 5K2.0. United States v. Kaye, 140 F.3d 86 (2nd Cir. 1998) (§ 5K1.1's application is limited to cooperation with federal authorities. Cooperation directed to state and local authorities is outside the scope, limitation, of § 5K1.1 and falls under § 5K2.0.); See also United States v. Gaines, 295 F.3d 293 (2nd Cir. 2002)

The position of the Second and Sixth Circuits in allowing courts to reward defendants for their efforts at cooperation has been bolstered by the teeth being removed from the Guidelines.  Now that the Guidelines are advisory and non-binding, other statutes become more relevant at sentencing.  For example, 18 U.S.C. § 3661 provides that *"no limitation* shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence" (emphasis added). Clearly, this Court not only has the authority to consider the assistance offered and rendered by the Defendant, but has a statutory  duty to do so when imposing its sentence.

Thus, in accordance with Booker and with 18 U.S.C. §§ 3553(a) and 3661, this court should consider the assistance offered and rendered by the Defendant. Accordingly, this Court has the authority to credit the Defendant for his

cooperation, assistance, and admissions, independent of the guideline range calculated in the PSI.

## CONCLUSION

As discussed above, the Defendant believes that an accurate assessment of the Guidelines results in an offense level 25 and a criminal history category II, and a guideline range of 63 to 78 months imprisonment.  However, regardless of this calculations under the Guidelines, significant mitigating factors exist, demonstrating that a sentence at the statutory required minimum is sufficient, but not greater than necessary to achieve the goals of sentencing, under 18 U.S.C. § 3553(a).

Respectfully submitted,


____s/ Al Pennington_____
Vader A. Pennington, Esq.
Attorney for the Defendant
P.O. Box 40361
Mobile, AL 36640
(251)438-5884

## CERTIFICATE OF SERVICE

I hereby certify that I have on this the 29th day of December, 2005, served a copy of the foregoing on  the Office of the Assistant United States Attorney, George F. May, Esq. via CM/ECF.

__s/ Al Pennington_____